No. 16-1904

# United States Court of Appeals For the First Circuit

---

ALFRED MORIN,

Plaintiff - Appellant,

v.

MARK K. LEAHY; COMMONWEALTH OF MASSACHUSETTS

Defendants - Appellees

---

APPEAL FROM A JUDGMENT OF THE UNITES STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS, THE HON. TIMOTHY S. HILLMAN
(15-CV-40048-TSH)

## REPLY BRIEF FOR THE PLAINTIFF - APPELLANT ALFRED MORIN

J. Steven Foley
1st Cir. Bar No. 1175482
11 Pleasant Street, Suite 100
Worcester, MA 01609
508-754-1041/508-739-4051
JSteven@attorneyfoley.com

*Counsel for Plaintiff-Appellant*

Dated: February 10, 2017

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ............................................................................................1

ARGUMENT ....................................................................................................1

    I.    ISSUES WERE RAISED IMPROPERLY IN APPEAL BY
          APPELLEES. ..........................................................................................1

    II.    ISSUES RAISED IMPROPERLY IN APPEAL BY
          APPELLEES. ..........................................................................................4

          A.    Second Amendment implications of the disqualifying
                statute. ..........................................................................................4

          B.    Liability under § 1983 for non-discretionary denial of
                license. ..........................................................................................9

          C.    Declaratory Judgment ............................................................12

    III.    REPLY TO RESPONSE TO THE PLAINTIFF'S ISSUES. ..............14

          A.    The Class A License to Carry Firearms is the least
                comprehensive license that allows the holder to keep a
                handgun in the home for self defense. .....................................14

          B.    Possession of a firearm in the home with an FID. ...................15

CONCLUSION ...............................................................................................17

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
          LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE
          REQUIREMENTS

CERTIFICATE OF SERVICE

# <u>TABLE OF AUTHORITIES</u>

**CASES:**

<u>Aetna Casualty & Surety Co. v. Quarles,</u>
  92 F.2d 321 (4th Cir. 1937)...................................................................13

<u>Battista v. Clarke,</u>
  645 F.3d 449 (1st Cir. 2011) ................................................................11

<u>Binderup v. The Attorney General,</u>
  836 F.3d 336 (3rd Cir. 2016) ............................................................5, 7

<u>Board of the County Comm'rs v. Brown,</u>
  520 U.S. 397 (1997)...............................................................................10

<u>Cepero-Rivera v. Fagundo,</u>
  414 F.3d 124 (1st Cir. 2005) ................................................................10

<u>Cunningham Bros., Inc. v. Bail,</u>
  407 F.2d 1165 (7th Cir. 1969)..............................................................13

<u>D.C. v. Heller,</u>
  554 U.S. 570 (2008)............................................................................9, 17

<u>Ex Parte Young,</u>
  209 U.S. 123 (1908)...............................................................................12

<u>Goldstein v. Galvin,</u>
  719 F.3d 16 (1st Cir. 2013) ..................................................................11

<u>Maryland Casualty Co. v. Boyle Construction Co.,</u>
  123 F.2d 558 (4th Cir. 1941).................................................................13

<u>Monell v. Department of Social Services,</u>
  436 U.S. 658 (1978)....................................................................10, 11, 12

<u>Morin v. Leahy,</u>
  2016 U.S. Dist. LEXIS 65490 (D. Mass. 2016)..................................3

<u>Vaqueria Tres Monjitas, Inc. v. Irizarry</u>,
    587 F.3d 464 (1st Cir. 2009) ........................................................12

<u>Zwetchkenbaum v. Operations, Inc.</u>,
    165 F. Supp. 449 (D.R.I. 1958)....................................................13

**CONSTITUTIONAL PROVISIONS:**

Second Amendment to the United States Constitution....................................*passim*

**STATUTES:**

28 U.S.C. § 2201 ..........................................................................................13
42 U.S.C. § 1983 ..............................................................................9, 10, 11, 12, 13

M.G.L. c. 140, § 121 ......................................................................................9
M.G.L. c. 140, § 129B ..............................................................................2, 14-15
M.G.L. c. 140, § 131 ............................................................................2, 9, 10, 14

**ACTS AND RESOLVES:**

2014 Mass. Acts Ch. 284, § 101 .................................................................4

**OTHER AUTHORITIES:**

*Bureau of Justice Statistics, U.S. Dep't of Justice, Recidivism of Prisoners*
    Released in 1994 (2002) .......................................................................7

Garen J. Wintemute et al., *Prior Misdemeanor Convictions as a Risk Factor*
    *for Later Violent and Firearm-Related Criminal Activity Among*
    *Authorized Purchasers of Handguns*, 280 Am. Med. Ass'n 2083, 2086
    (1998)...................................................................................................7

*Mona A. Wright et al., Effectiveness of Denial of Handgun Purchase to*
    *Persons Believed to Be at High Risk for Firearm Violence*, 89 Am. J.
    of Pub. Health 88, 89 (1999) ............................................................7

## INTRODUCTION

The Appellant Alfred J. Morin (hereinafter "Dr. Morin") has appealed the District Court decision to uphold Northborough Police Chief's denial of the Appellant's application for a License to Carry ("LTC"). Dr. Morin is not resubmitting the fact section, a jurisdictional statement, statement of the case, and standard of review, but incorporates by reference those items previously submitted to the court by all three parties.

## ARGUMENT

### I.   ISSUES WERE RAISED IMPROPERLY IN APPEAL BY APPELLEES.

The issues raised in this appeal by Appellant are the only issues properly before this Court. The Commonwealth created questions presented from whole cloth, having failed to file a notice of cross appeal as is required by Rule 28.1, failed to file a notice of appeal as required by Rule 3(a), et seq.; and was a prevailing party in the court below. The questions presented to this court by Appellees are not properly before this Court.[1]

The only questions that are, as stated previously by the Appellant (see Appellant's Brief), deal with the error of law that occurred in the court below. Chiefly, what is the most restrictive/least comprehensive license that allows Dr.

---

[1] Appellant acknowledges that as a regrettable result of a drafting error, there was an implication in the conclusion of Appellant's opening brief, that the result of this appeal should be to issue the LTC A to appellant, and counsel regrets that error.

Morin to possess a handgun in the home, that is properly before this court. This issue was introduced by the court below after primary briefing. Neither Appellee raised the issue of an LTC not being the most restrictive license for possession of a handgun in the home until after the District Court's order and decision in the case below, and then only as a response to a request for reconsideration of the order filed by Appellant. In the briefing for summary judgement, the Commonwealth claimed Appellant lacked standing to challenge the FID statute (G.L. c. 140, § 129B(1)(i)(D), and G.L. c. 140, § 129B(1)(ii)(D)) on the grounds that there was no application for an FID card (Commonwealth's Memorandum in Support of Cross Motion for Summary Judgment, page 20), but did not make the same defense as to G.L. c. 140, § 131(d)(i)(D). On § 131(d)(i)(D), the defense was that Appellant's disability derived from a conviction outside the state of MA while § 131(d)(ii)(D) requires the conviction having taken place inside the state of Massachusetts. Appellees never raised any issue of the license on G.L. c. 140, § 131(d)(ii)(D) beyond the defense that the statute was constitutional based on their powers to deny licenses to those who have "inability to handle firearms in a virtuous manner." (See Commonwealth of Massachusetts District Court Brief, p. 12.).

Subsequent to briefing in the Court below, the decision was issued that claimed Appellant failed to apply for the most restrictive license that allows

2

possession of a handgun/firearm in the home, based on outdated case law, and as

such the Second Amendment is not implicated, consequently ruling that:

> [Appellant's] argument is undermined by the fact that he seeks the
> least restrictive license available in Massachusetts, allowing him to
> carry concealed firearms in public. Furthermore, as stated in his
> affidavit, it was his habit for the entire time that he maintained his
> Class A license—approximately twenty years— to carry a concealed
> pistol on his person at all times. Thus, it is not necessary to determine
> whether a complete categorical prohibition on the arms rights of
> individuals who have been convicted of certain weapons-related
> misdemeanors is constitutional, because that is not what is being
> challenged in this case.
>
> It is also unnecessary to speculate on the level of scrutiny that the
> First Circuit might apply to restrictions on the possession of firearms
> outside the home. In *Hightower*, the court held that section 131(f)
> would pass muster under any level of scrutiny, because "the
> interest . . . in carrying concealed weapons outside the home is distinct
> from th[e] core interest emphasized in *Heller*." Morin v. Leahy, 2016
> U.S. Dist. LEXIS 65490, *15-16 (D. Mass. 2016).

Additionally, the decision makes clear, the Hightower analysis was

controlling:

> Thus, pursuant to the First Circuit's decision in *Hightower*, I find that
> the right to obtain a Class A license to carry a concealed firearm in
> public is not a "core" Second Amendment right, and that section
> 131(d)(ii)(D) serves the important purpose of preventing potentially
> dangerous individuals from carrying concealed [*20] firearms.
> Accordingly, the law is constitutional as applied to Morin. Id.

The error of law, that the LTC is not the most restrictive license that allows

possession in the home of a handgun, underpins the entirety of the decision.

At the time Appellant applied for his LTC, the Class B LTC was statutorily barred from being issued by licensing authorities. 2014 Mass. Acts Ch. 284, § 101. The only other license capable of possessing any gun was the FID but it does not allow possession of a handgun in the home. (Appellant's Brief.)

## II.   ISSUES RAISED IMPROPERLY IN APPEAL BY APPELLEES.

### A.   Second Amendment implications of the disqualifying statute.

Although not raised by the Appellant, both the Town of Northborough and the Commonwealth argue that the statute in question does not violate the Second Amendment to the United States Constitution.

> Whether G.L. c. 140, § 131(d)(ii)(D), which disqualifies persons with certain weapons-related criminal convictions from obtaining a license to carry firearms, comports with the Second Amendment to the United States Constitution, as applied to the appellant. (See Commonwealth of Massachusetts Brief, hereinafter "Com. Brief", p. 1.)

> Whether the District Court correctly held that G.L. c. 140, §131(d)(ii)(D) is constitutional as applied to the plaintiff/appellant Alfred Morin ("Morin")'s denial of his Class A license to carry firearms by the Town of Northborough Chief of Police? (See Leahy Brief, p. 1.)

This question was not reached by the District Court, as the court held the Second Amendment was not implicated because Dr. Morin had applied for the least restrictive license available that would allow him to possess a handgun in the home for self-defense.

Contrary to the unflattering portrait painted by the Appellees, Dr. Alfred Morin is 70 years old, is happily married, employs 45 people at two businesses, and other than the 2004 incident in Washington, D.C., has no criminal record. (See JA p. 119 ¶¶ 1, 2.) Dr. Morin is a pillar of the community, raising funds for charity. He was appointed to several educational search committees for teachers and principals, as well as a superintendent's curriculum review committee. (See id. ¶¶¶¶ 3, 4, 5, 6.) Dr. Morin is a model citizen who has led an exemplary life. As the Third Circuit held in Binderup v. The Attorney General, 836 F.3d 336, 354 (3rd Cir. 2016):

> The Government claims that someone like Suarez is "particularly likely to misuse firearms" because he belongs to a category of "potentially irresponsible persons," Gov't Suarez Br. at 27-28, and that someone like Binderup is "particularly likely to commit additional crimes in the future," Gov't Binderup Br. at 35. But it must "present some meaningful evidence, not mere assertions, to justify its predictive [and here conclusory] judgments." *Heller*, 670 F.3d at 1259. In these cases neither the evidence in the record nor common sense supports those assertions.

The Appellees allege that Dr. Morin, a 70 year old man with no criminal record but the non-violent misdemeanor conviction at the heart of this appeal, poses a danger to society. As the Third Circuit put it, "neither the evidence in the record nor common sense supports those assertions."

It should also be stressed that this entire situation resulted from Dr. Morin's efforts to comply with what he understood the law to be. When he went into the

Smithsonian, he saw a sign stating that weapons were not permitted. Believing that

his Massachusetts LTC would be respected like his driver's license – good in all

fifty states – Dr. Morin did what any law-abiding gun owner would do after seeing

a sign saying no weapons were allowed. He went to a security guard and asked to

have his weapon checked in. "Dr. Morin's decision to approach a federal

government building in the District of Columbia with a loaded pistol reveals

profound disregard for the laws protecting the security of federal officials and the

public." (See Com. Brief, p. 36.) Dr. Morin only showed "profound disregard" if

one overlooks the fact that he sought out a security guard for assistance in

checking in his "pistol." If Dr. Morin was the wrongdoer the Appellees portray him

as, he would not have approached a security guard for assistance.

The Commonwealth argues that it may categorically disqualify persons with

misdemeanor convictions from firearms possession. It then goes on to cite a line of

cases where prohibitions were upheld for persons convicted of felonies, persons

convicted of drug related offenses, persons convicted of violent offenses, or

persons convicted of domestic assault. The Commonwealth does not point to a

single case where a prohibition has been upheld for a misdemeanor offense similar

to the Appellant's strict liability conviction.

The Third Circuit held that a court can look at a non-violent offender

Defendant – like Dr. Morin - and conclude that this individual is not a dangerous

criminal likely to reoffend. See Binderup v. US Attorney General, 836 F.3d at 341,

> The District Courts rejected the Challengers' statutory argument but
> held that § 922(g)(1) is unconstitutional as applied. The United States
> District Court for the Eastern District of Pennsylvania ruled that
> § 922(g)(1) is unconstitutional as applied to Binderup because he
> "distinguishe[d] himself from those individuals traditionally disarmed
> as the result of prior criminal conduct and demonstrate[d] that he
> poses no greater threat of future violent criminal activity than the
> average law-abiding citizen."

In Binderup, the government cited the same studies cited by the

Commonwealth here: *Mona A. Wright et al., Effectiveness of Denial of Handgun*

*Purchase to Persons Believed to Be at High Risk for Firearm Violence*, 89 Am. J.

of Pub. Health 88, 89 (1999); Garen J. Wintemute et al., *Prior Misdemeanor*

*Convictions as a Risk Factor for Later Violent and Firearm-Related Criminal*

*Activity Among Authorized Purchasers of Handguns*, 280 Am. Med. Ass'n 2083,

2086 (1998); and a later version of *Bureau of Justice Statistics, U.S. Dep't of*

*Justice, Recidivism of Prisoners* Released in 1994, at 6 (2002). (See Com. Brief,

pp. 29-30.)[2] The Binderup court, 836 F.3d at 354, went on:

> The Government relies on a number of off-point statistical studies to
> argue that it is reasonable to disarm the Challengers because of their
> convictions. It notes that felons generally commit violent crimes more
> frequently than non-felons. The most cogent principle that can be

---

[2] The District Court cited all three of these studies as grounds that Morin was
likely to reoffend. (See Addendum, pp. 11-12.)

7

> drawn from traditional limitations on the right to keep and bear arms
> is that dangerous persons likely to use firearms for illicit purposes
> were not understood to be protected by the Second Amendment. And
> because Binderup and Suarez have demonstrated that their crimes of
> conviction were nonviolent and that their personal circumstances are
> distinguishable from those of persons who do not enjoy Second
> Amendment rights because of their demonstrated proclivity for
> violence, the judgments of the District Courts must be affirmed.

This is precisely on point. Dr. Morin is not a drug dealer, domestic abuser, or violent criminal. The crime for which he was arrested was a misdemeanor that did not involve violence, or even intent. The court should rule that the law prohibiting Dr. Morin from possessing a handgun, as applied, is unconstitutional.

The Appellees also misrepresented Dr. Morin's appeal: "Because Dr. Morin has made no effort to persuade this Court that disqualifying him from carrying a firearm in public is incompatible with the Second Amendment, this Court should deem the argument waived and may affirm the District Court's judgment on that basis. (See Com. Brief, id. at 45.)

This is not true. The District Court ruled that if Dr. Morin wanted a handgun for the defense of "hearth and home", he could have applied for a Class B License or an FID card. (See the Com. Brief, pp. 12-13.) The Class B license was repealed seventeen months before Dr. Morin filed this lawsuit. The FID does not permit the possession of handguns. Dr. Morin is *not* appealing because the court ruled he was disqualified from carrying a firearm in public.

8

"In sum, we hold that the District's ban on handgun possession *in the home* violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense."

See <u>D.C. v. Heller</u>, 554 U.S. 570 (2008). As the court went on to say:

> It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon. There are many reasons that a citizen may prefer a handgun for home defense: It is easier to store in a location that is readily accessible in an emergency; it cannot easily be redirected or wrestled away by an attacker; it is easier to use for those without the upper-body strength to lift and aim a long gun; it can be pointed at a burglar with one hand while the other hand dials the police. Whatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid.

**B.    <u>Liability under § 1983 for non-discretionary denial of license.</u>**

Whether the Chief of Police can be held liable pursuant to 42 U.S.C. §1983 for his non-discretionary denial of a license to carry firearms dictated by the statutory requirements of G.L. c. 140, §131(d)(ii)(D)? (<u>See</u> Leahy Brief, p. 1.)

Gun licenses are issued by a "licensing authority," defined as either "the chief of police or the board or officer having control of the police in a city or town," G.L. c. 140, § 121, or the colonel of the State police, <u>id.</u> § 131(d). Chief Leahy is the designated "licensing authority" for Northborough. He is the sole decision maker, policy maker, and supervisor when it comes to Northborough gun licensing. The Appellee's protestations aside, in Northborough on gun issues, the

buck stopped at Chief Leahy. It was Chief Leahy, acting in his capacity as the

"licensing authority," who denied Morin's LTC application.

In his brief Leahy cites Monell v. Department of Social Services, 436 U.S.

658 (1978) for the proposition that "a local government may not be sued under

§1983 for an injury inflicted solely by its employees"; and citing Board of the

County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell) "may not be

held liable under §1983 solely because it employs a tortfeasor."

This is the context in which it was made:

> On the other hand, the language of § 1983, read against the
> background of the same legislative history, compels the conclusion
> that Congress did not intend municipalities to be held liable unless
> action pursuant to official municipal policy of some nature caused a
> constitutional tort. In particular, we conclude that a municipality
> cannot be held liable solely because it employs a tortfeasor—or, in
> other words, a municipality cannot be held liable under § 1983 on a
> respondeat superior theory. (See Monell, 436 U.S. at 691.)

Federal law makes a state official liable if he acts under color of law and

"subjects, or causes to be subjected," any person "to the deprivation of any rights,

privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.

Liability extends to "those individuals who participated in the conduct that

deprived the plaintiff of his rights."  Cepero-Rivera v. Fagundo, 414 F.3d 124, 129

(1st Cir. 2005).  Here, the Complaint alleges that Appellee Police Chief  acted

pursuant to a state law – M.G.L. c. 140, § 131 – and that in so doing, he denied

Plaintiff Alfred Morin of a federal constitutional right – specifically, his Second

Amendment right to keep and bear arms.  The Complaint thus states a valid claim against the Chief under 42 U.S.C. § 1983.

The Complaint also states a valid claim against the Town of Northborough. The claims against the Chief all concern actions he took in his official capacity as the Northborough Police Chief.  It is well-established that when a lawsuit challenges a person's actions in an official capacity, it "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  Goldstein v. Galvin, 719 F.3d 16, 23 (1st Cir. 2013) (quoting Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 n.55 (1978)).  Thus, because the Complaint states a valid claim against the Chief in his official capacity, it likewise states a valid claim against the Town of Northborough, on whose behalf the Chief was acting.  Because the lawsuit seeks only prospective injunctive and declaratory relief, rather than money damages, there is no need for "the separate roles of individual defendants [to] be sorted out."  Battista v. Clarke, 645 F.3d 449, 452 (1st Cir. 2011).

Appellees' claim that they are not liable because they merely executed a non-discretionary state law are meritless – and indeed, accepting these claims would turn more than 100 years' worth of civil rights jurisprudence on its head. These claims all flow from Appellees' failure to recognize the basic distinction between retrospective claims for money damages and prospective claims for

declaratory and injunctive relief. While it is true that municipal defendants cannot be held liable to pay money damages merely because they executed a state law in a manner that violated the federal Constitution, ever since the Supreme Court's 1908 decision in Ex Parte Young, 209 U.S. 123 (1908), plaintiffs have been able to use § 1983 to "proceed against state officers in their official capacities to compel them to comply with federal law." Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 478 (1st Cir. 2009). The limitation is that these lawsuits can only seek "prospective injunctive or declaratory relief," rather than "retroactive monetary damages or equitable restitution." Id. Of course, the Complaint here seeks only prospective injunctive and declaratory relief – not retroactive monetary damages.

### C.    **Declaratory Judgment**

Whether a declaratory judgment ruling is appropriate in this case pursuant to 28 U.S.C. §2201 where a specific remedy afforded pursuant to 42 U.S.C. §1983 can be made regarding the as-applied constitutional challenge by Morin? (See Leahy Brief, p. 1.)

Yes, according to the Supreme Court.

"Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." See Monell v. Department of Social Services, 436 U.S. at 690 (emphasis added).

12

In his brief, Leahy cites two cases to support his contention that a Section 1983 case cannot ask for a declaratory judgment under 28 U.S.C. § 2201, Zwetchkenbaum v. Operations, Inc., 165 F. Supp. 449, 454 (D.R.I. 1958), and Cunningham Bros., Inc. v. Bail, 407 F.2d 1165 (7th Cir. 1969) (See Appellee's Brief, pp. 20-21.). Incredibly, neither decision had a single reference to Section 1983.  Zwetchkenbaum was a dispute over a leasehold; Cunningham was a negligence diversity case. In terms of precedential value on a Section 1983 case, Zwetchkenbaum and Cunningham are simply not applicable.

"This is not to say that the declaratory jurisdiction is defeated because there is another remedy available - - - It is merely to hold that the court is vested with a sound discretion with respect to the granting of declaratory relief, and that the discretion not to grant it is soundly exercised where it appears that such relief will serve no useful purpose ---." See In Maryland Casualty Co. v. Boyle Construction Co., Inc., 123 F.2d 558, 562 (4th Cir. 1941); see also Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937): "The object of the statute is to afford a new form of relief where needed."

We urge the court to follow the Fourth Circuit and leave the question of whether declaratory relief should be utilized in Section 1983 cases to the sound discretion of the trial judge. Even if the court holds that Dr. Morin did not need

13

such relief, there may be other situations in which it could "afford a new form of relief where needed."

## III.    REPLY TO RESPONSE TO THE PLAINTIFF'S ISSUES.

### A.    The Class A License to Carry Firearms is the least comprehensive license that allows the holder to keep a handgun in the home for self defense.

Is the Class A License to Carry Firearms the least comprehensive license available in Massachusetts that allows its holder to purchase a handgun and keep it in his home for self-defense? (See Plaintiff-Appellant's Brief, p. 1.)

Both Defendants position is that an FID card does allow a resident to possess "firearms" for use in the home, but fail to address the express prohibition contained in G.L. c. 140, § 129B(6).

> **A firearm identification card shall not entitle a holder thereof to possess**: (i) **a large capacity firearm** or large capacity feeding device therefor, except under a Class A license issued to a shooting club as provided under section 131 or under the direct supervision of a holder of a Class A license issued to an individual under section 131 at an incorporated shooting club or licensed shooting range; or (ii) **a non-large capacity firearm** or large capacity rifle or shotgun or large capacity feeding device therefor, except under a Class A license issued to a shooting club as provided under section 131 or under the direct supervision of a holder of a Class A or Class B license issued to an individual under section 131 at an incorporated shooting club or licensed shooting range. A firearm identification card shall not entitle a holder thereof to possess any rifle or shotgun that is, or in such manner that is, otherwise prohibited by law. A firearm identification card issued pursuant to subclause (vi) of clause (1) of section 122D shall be valid for the purpose of purchasing and possessing chemical mace, pepper spray or other similarly propelled liquid, gas or powder designed to temporarily incapacitate. Except as otherwise provided

14

herein, a firearm identification card shall not be valid for the use, possession, ownership, transfer, purchase, sale, lease, rental or transportation of a rifle or shotgun if such rifle or shotgun is a large capacity weapon as defined in section 121. (Emphasis added.)

As explained in the Appellant's Brief, an FID expressly prohibits possession of a handgun except under specific circumstances, none of which include in the home for self-defense. Appellant's Brief, p. 15.

## B.   <u>Possession of a firearm in the home with an FID.</u>

Can one legally possess a handgun in the home with only an FID card in Massachusetts? (<u>See</u> Plaintiff-Appellant's Brief, p. 1.)

The Commonwealth contends that an FID does allow an individual to possess a "firearm," the definition of which includes a handgun under Massachusetts law:

> A licensing authority may separately issue firearm identification ("FID") cards, which are more limited than the license to carry. An FID card allows the holder to possess shotguns and rifles, and to "possess a firearm within the holder's residence or place of business, but not to carry it to or in any other place." *Commonwealth v. Powell*, 459 Mass. 572, 587, 946 N.E.2d 114, 128 (2011); *see also Chardin*, 989 N.E.2d at 394 n.

(<u>See</u> Com. Brief, pp. 5-6.)

Likewise, Leahy argues in his brief that the state does not ban possession of firearms in the home. (<u>See</u> Leahy Brief, pp. 8-12.)

The Plaintiff detailed in his original brief why the word "firearm" used by the Commonwealth may not authorize purchasing a "handgun" with an FID permit. (See Appellant's original brief pp. 15-18.) As the Plaintiff pointed out: "Unless one's home is at a shooting club with a Class A license, or one's home is an incorporated shooting club or licensed shooting range, and one is constantly under the direct supervision of a holder of a Class A or Class B license, one cannot simply possess a handgun in one's home in Massachusetts with an FID." (See id.)

One Appellee states: "Holders of Class A and B licenses may possess and carry 'firearms,' 'rifles,' or 'shotguns' in their homes or in public. [Chapter 140] Id. § 131(a), (b). Only Class A license holders, however, may 'carry or possess a loaded firearm in a concealed manner in any public place or way,' and obtain, possess, or carry any 'large capacity' firearm, rifle, or shotgun." (See Com. Brief, p. 3, emphasis added.)

The Appellees further state: "The licensing authority may, in its discretion, issue the license to carry subject to restrictions. Id. §§ 131(a), (b)." (See Com. Brief, p. 5.)

Although a Class A license to Carry Firearms does, indeed, allow one to carry a concealed handgun in public if not otherwise restricted, it is the only license that permits possession of a handgun, either in public or in the home for self-defense.

16

## **CONCLUSION**

The License to Carry Firearms that Dr. Morin applied for is the ONLY

license available that will allow him to possess a handgun in the home for self-

defense.  Under D.C. v. Heller, having a handgun in one's home is a "core" Second

Amendment right. For all the above reasons, Dr. Morin requests that this appeal be

granted and the case returned to the District Court for reconsideration in light that

c. 140, § 131 covers constitutionally protected activity, to wit possession of

firearms within the home. If there is still question about what the statute allows, a

question should be certified to the SJC for clarification on remand to the district

court.

Respectfully submitted,
Alfred L. Morin,

By his attorney,

/s/ J. Steven Foley

J. Steven Foley
1st Cir. Bar No. 1175482
Law Office of J. Steven Foley
100 Pleasant Street #100
Worcester, MA 01609
508-754-1041/508-739-4051
JSteven@attorneyfoley.com

Dated: February 10, 2017

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Fed. R. App. P.

   32(a)(7)(B) because it contains 4,307 words, excluding the parts of the brief

   exempted by Fed. R. App. P. 32(a)(7)(B).

2. This brief complies with the typeface requirement of Fed. R. App. P.

   32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

   it has been prepared in a proportionally spaced typeface using Microsoft

   Word 2013 in 14-point Times New Roman type.

/s/ J. Steven Foley
J. Steven Foley

## <u>CERTIFICATE OF SERVICE</u>

I, J. Steven Foley, certify that the above document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be served upon any party or counsel of record who is not a registered participant of the Court's ECF system upon notification by the Court of those individuals who will not be served electronically.

Brian W. Riley, Esquire
David J. Doneski, Esquire
Janelle M. Austin, Esquire
Kopelman & Paige, PC
101 Arch Street
Boston, Massachusetts 02110

Julia E. Kobick
Office of the Attorney General
One Ashburton Place
Boston, Massachusetts 02108

*/s/. J. Steven Foley*
J. Steven Foley

Dated: February 10, 2017